IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARY TISCORNIA, an individual, et al., <br><br> Plaintiff, <br><br> v. <br><br> NATURAL RESOURCES USA CORPORATION, <br><br> Defendant. <br> _____ <br><br> NATURAL RESOURCES USA CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> FELIX UNGAR, an individual, JAMES V. RILEY, trustee, JAMES V. RILEY REVOCABLE TRUST, Dated June 17, 1998, GARY CRAYTON, an individual, and CAROLINE M. SCARPELLI, an individual, <br><br> Defendants. | **Memorandum Decision and Order** <br><br><br> Case No. 2:12-cv-00374-DB <br><br> Judge Dee Benson |

     This matter is before the court on cross motions for judgment on the pleadings. (Dkt. Nos. 21 and 25.) A hearing on these motions was held on November 2, 2012. At the hearing, plaintiffs Mary Tiscornia, et al., were represented by Andrew G. Deiss and Billie J. Siddoway. Defendant Natural Resources USA Corporation ("NRUC") was represented by D. Craig Parry. Before the hearing, the court considered the memoranda submitted by the parties.  Since taking

1

the motion under advisement, the court has further considered the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## Background

NRUC is a company engaged in the business of identifying and developing natural resources. Prior to the events which gave rise to this lawsuit, NRUC was a publicly traded company. In December 2011, NRUC engaged in a "going-private transaction pursuant to a short-form merger." This short-form merger triggered certain dissenters' rights in NRUC's shareholders under Part 13 of the Utah Revised Business Corporation Act. Utah Code §§16-10a-1301 through 1331.

### Legal Background: Dissenters' Rights Statute

When a company action gives rise to dissenters' rights, both the company and the affected shareholders are required to follow an ordered, multi-step procedure in order to preserve and exercise dissenting shareholders' rights. Dissenters have the right to demand payment for their shares. Once they have been paid according to the corporation's estimate of the shares' value, the dissenters have the right to demand further payment according to their own estimate of the shares' value. If the corporation and the shareholders are unable to agree upon a negotiated price per share, a judicial proceeding is initiated in which the value per share is determined. The procedure for preserving and exercising dissenters' rights is set forth in Part 13 of the Utah Revised Business Corporation Act. Utah Code §§16-10a-1301 through 1331.

First, when a corporate action gives rise to dissenters' rights, the corporation must give a "dissenters' notice" to the affected shareholders.  §16-10a-1322. This notice must include a

"form for demanding payment, which form requests a dissenter to state an address to which payment is to be made" and a "date by which the corporation must receive the payment demand and by which certificates for certificated shares must be deposited at the address indicated in the dissenters' notice." Id. The notice must also be accompanied by a copy of Part 13 of Utah's Revised Business Corporation Act. Id.

Second, once the shareholders have received the dissenters' notice, they must "cause the corporation to receive a payment demand" which may be expressed in the completed form provided by the corporation or in another writing by the date or dates set in the dissenters' notice. §16-10a-1323(1)(a), (3). As part of their payment demand, the shareholders must "deposit certificates for [their] certificated shares in accordance with the terms of the dissenters' notice." §16-10a-1323(1)(b).

Third, when the corporation has received the shareholders' payment demands, the corporation must make a payment of the amount it estimates to be the fair value of the dissenters' shares to all those who properly demanded payment under §16-10a-1323. §16-10a-1325(1). This payment must be accompanied by certain information regarding the corporation's finances, a statement of the corporation's estimate of the fair value of the shares, a statement of a dissenter's right to demand further payment under §16-10a-1328, and a copy of Part 13 of Utah's Revised Business Corporations Act. §16-10a-1325(2).

Fourth, when the shareholders have received payment under §16-10a-1325 as described above, the shareholders may notify the corporation, in writing, of their own estimate of the fair value of their shares and demand payment of that estimated amount, plus interest, less the

payment made under §16-10a-1325. §16-10a-1328(1). This notification must be made within "30 days after the corporation made or offered payment for [the] shares." §16-10a-1328(2).

Finally, "[i]f a demand for payment under Section 16-10a-1328 remains unresolved, the corporation shall commence a proceeding within 60 days after receiving the payment demand contemplated by Section 16-10a-1328, and petition the court to determine the fair value of the shares and the amount of interest." §16-10a-1330(1).

The procedure set forth above applies only to those shareholders who were in possession of their shares prior to the announcement of the corporate action giving rise to dissenters' rights. However, shareholders who acquired their rights after the announcement of the relevant corporate action may still assert dissenters' rights under the Statute. Such shareholders must identify themselves as having acquired their shares after the relevant corporate action in their payment demand under §16-10a-1323. Then, under §16-10a-1327, the corporation may, "in lieu of making the payment provided [for] in Section 16-10a-1325," make an offer to the dissenting shareholders who acquired their shares after the announcement of the relevant corporate action which those shareholders may accept or reject. Such an offer must "include or be accompanied by the information" which is required to accompany a payment under §16-10a-1325. If the shareholders reject the offer, they may demand payment according to their estimated value per share, plus interest according to §16-10a-1328.

**Factual Background**

On December 1, 2011, NRUC notified its shareholders of the impending merger by letter. (Def.'s Ans., Ex. A, Notice of Merger.) This letter notified the shareholders of their dissenters' rights pursuant to Utah Code §16-10a-1322. In accordance with the Statute, the letter included a

form for demanding payment and a deadline (January 16, 2012) by which payment demands must be made. (Id.) The letter also informed the shareholders that the company's stock had been valued at $0.57 per share and that the shareholders demanding payment would receive their payment according to that valuation.

On December 14, 2011, plaintiff Mary Tiscornia—an affected shareholder entitled to dissenters' rights—submitted a form demanding payment to NRUC. (NRUC's Ans., Ex. C, Tiscornia Payment Demand.) On December 29, 2011, a financial services and investments firm called Wedbush Securities, Inc. sent a letter to NRUC on behalf 25 shareholders indicating their intention to exercise dissenters' rights and demanding payment of $3.00 per share. (NRUC's Ans., Ex. D, Wedbush Payment Demand.)

On January 5, 2012, NRUC sent separate letters to Mary Tiscornia and Wedbush informing them that their payment demands were defective under Utah Code §16-10a-1323. (NRUC's Ans., Ex.'s E and F, Letters to Mary Tiscornia and Wedbush Regarding Deficient Forms.)[1] The letters contained instructions on how to remedy the deficiencies and indicated a deadline of January 16, 2012, by which the deficiencies needed to be corrected. On January 9, 2012, Wedbush sent an amended payment demand form on behalf of Mary Tiscornia which corrected the deficiencies indicated by NRUC. (NRUC's Ans., Ex. G, Amended Tiscornia Payment Demand.) On January 12, 2012, Wedbush also sent an amended payment demand on behalf of 17 of the other shareholders it represented, which includes the remaining plaintiffs in

---

[1] In the letter to Mary Tiscornia, NRUC informed her that her payment demand was deficient because it lacked proper shareholder certification and was not accompanied by the affected share certificates. (NRUC's Ans., Ex. E., Letter to Mary Tiscornia Regarding Defective Form.) NRUC's letter to Wedbush indicated the same deficiencies. (NRUC's Ans., Ex. F., Letter to Wedbush Regarding Deficient Form.)

this lawsuit. (NRUC's Ans., Ex. H, Amended Wedbush Payment Demand.) In this amended payment demand, Wedbush reasserted the shareholders' demand for payments of $3.00 per share.

On January 23, 2012, NRUC sent a letter to Wedbush confirming that Wedbush had sufficiently corrected the deficiencies in its first payment demand, thereby bringing its demand into accordance with the requirements of Utah Code §16-10a-1323. (NRUC's Ans., Ex. I, NRUC's January 23 Letters to Wedbush.) The letter was accompanied by payment for the shares of all the plaintiffs (except Mary Tiscornia) represented by Wedbush according to a value of $0.57 per share. In accordance with Utah Code §16-10a-1325, this payment was accompanied by copies of letters which were sent to all of the plaintiffs which included the requisite balance sheets, income statements, and other financial information of NRUC. These letters also included a statement of NRUC's estimate of the shares' fair value and a copy of Part 13 of the Utah Revised Business Corporation Act. Finally, these letters included notification of the shareholders' right under §16-10a-1328 to notify NRUC of their own estimate of the fair value of the shares and to demand payment in that amount, plus interest and less the amount of the payment made under §16-10a-1325. (NRUC's Ans., Ex. I, NRUC's January 23 Letters to Wedbush.) In all of the letters, NRUC included a section in bold font which read: "**You waive the right to demand payment under Section 16-10a-1328 of the Act unless you cause NRUC to receive such notice within 30 days of the date of this letter.**"

On the same day, NRUC sent payment to Mary Tiscornia in the amount of $0.57 per share. (NRUC's Ans., Ex. J., NRUC's January 23 Letter to Mary Tiscornia.) This letter also contained all of the information required to accompany payment under Utah Code §16-10a-1325.

The letter explained that Mary Tiscornia could notify the NRUC of her own estimate of the fair value of the shares and demand payment of the estimated amount, plus interest and less the payment made under §16-10a-1325. The letter also included a statement of the time requirements for making such a demand in bold font which read: "**You waive the right to demand payment under Section 16-10a-1328 of the Act unless you cause NRUC to receive such notice within 30 days after the date of this letter.**"

None of the plaintiffs cashed the checks sent to them by NRUC. Neither did they submit a demand for payment according to their estimated value per share, plus interest and less the payment of the amount of the the uncashed checks within 30 days after they received the letters and payment from NRUC dated January 23, 2012. There was no further correspondence between the parties until March 22, 2012, when Wedbush sent a letter to NRUC advising NRUC that Wedbush was still in custody of the payment check sent on January 23, 2012. Wedbush indicated that it was under instruction from the plaintiffs not to deposit the check until a resolution was reached regarding their demand for $3.00 per share. ( NRUC's Ans., Ex. K, Wedbush March 22 Letter.) NRUC responded to Wedbush with a letter dated April 3, 2012, stating that none of the plaintiffs complied with Utah Code §16-10a-1328 because they did not "provide notification to the corporation, in writing, of [their] estimated fair value of their shares and demand payment of the estimated amount, less payment made by the corporation, '*within 30 days after the corporation made or offered payment for [their] shares.*'" (NRUC's Ans., Ex. L, NRUC's April 3 Letter *citing* Utah Code §16-10a-1328(2).) Thus, NRUC asserted that the plaintiffs' right to demand further payment under a higher estimated value of the shares under §16-10a-1328 terminated 30 days after the January 23, 2012, payment.

In June of 2012, the plaintiffs brought the present lawsuit seeking a declaration that they properly demanded payment under Utah Code §16-10a-1328, an award against NRUC in the amount of $3.00 per share for each of the plaintiffs' shares, and payment of attorneys' fees. NRUC the filed the present motion for judgment on the pleadings on July 19, 2012, to which the plaintiffs responded with a cross motion for judgment on the pleadings on August 20, 2012.[2]

## DISCUSSION

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Therefore, "[t]he court's function . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). Since this case is brought before the court on cross motions, the court "examines the evidence that supports each party's claims in the light most favorable to the nonmoving party." *Herrod v. Wilshire Ins. Co.*, 737 F. Supp. 2d 1312, 1313 (D. Utah, 2010).

### Utah Code § 16-10a-1328

At the heart of the dispute between the parties in their cross-motions for judgment on the pleadings is the proper interpretation of Utah Code §16-10a-1328, which reads:

---

[2]Throughout the period comprising NRUC's correspondence with the plaintiffs, other shareholders demanded payment pursuant to Utah Code §16-10a-1323. After receiving NRUC's payment pursuant to §16-10a-1325, these shareholders notified NRUC of their dissatisfaction with the purchase price of the shares on February 17, 21, 24, and 28, 2012, in an attempt to comply with §16-10a-1328. (NRUC's Compl. at Dkt. No. 1.) NRUC has initiated a judicial proceeding to determine the fair market value of the shares belonging to these shareholders who sent their demand for their estimated price per share *after* they received payment under §16-10a-1325.

>(1) A dissenter who has not accepted an offer made by a corporation under Section 16-10a-1327 may notify the corporation in writing of his own estimate of the fair value of his shares and demand payment of the estimated amount, plus interest, less any payment made under Section 16-10a-1325, if:
>>(a) the dissenter believes that the amount paid under Section 16-10a-1325 or offered under Section 16-10a-1327 is less than the fair value of the shares....
>
>(2) A dissenter waives the right to demand payment under this section unless he causes the corporation to receive the notice required by Subsection (1) within 30 days after the corporation made or offered payment for his shares.[3]

---

[3] The court notes that the language of the first clause of Utah Code §16-10a-1328(1) creates some initial ambiguity in the application of the statute. At first blush, the text appears to limit §16-10a-1328 to only "[a] dissenter who has not accepted an offer made by a corporation under Section 16-10a-1327." §16-10a-1328(1). However, to apply the statute in this way would deprive an entire category of dissenter—namely, those who possessed their shares before the announcement of the relevant corporate action—of a means to dissent to a corporation's estimated value of their shares. Such an interpretation of §16-10a-1328 is incompatible with the rest of the statute. The Statute clearly anticipates that dissenters who received payments under §16-10a-1325 can and should have the opportunity to notify the government of their alternative valuation of shares. For instance, §16-10a-1328 refers to a dissenter's right to notify a corporation of his own value of the shares if he "believes that the amount paid under Section 16-10a-1325...is less than the fair value of the shares." §16-10a-1328(1)(a). It is unreasonable to assume that the statute intends for shareholders who acquired their shares after the announcement of the relevant corporate action and who only received offers under §16-10a-1327 to weigh in on payments made under §16-10a-1325 which they never received. Furthermore, §16-10a-1328(2) explicitly refers to the right to notify the corporation of an alternate valuation of the shares belonging both to dissenters who received an offer under §16-10a-1327 or a payment under §16-10a-1325.

Elsewhere in the statute, the dissenters' right to notify a corporation of an alternate valuation of the shares is referred to as belonging to dissenters' who received payment under Utah Code §16-10a-1325. For instance, §16-10a-1325 requires that the payment distributed under it be accompanied by a "a statement of the dissenter's right to demand payment under Section 16-10a-1328." Utah Code §16-10a-1325(2)(c). The inclusion of a statement of the §16-10a-1328 right to demand further payment with a §16-10a-1325 payment would be superfluous if a dissenter who received a payment under §16-10a-1325 could not then assert that right. Therefore, while §16-10a-1328 seems unclear in its first section, the intent of the statute is clear when applied in context. Utah Code §16-10a-1328 allows both dissenters who received payment under §16-10a-1325 and those who received an offer under §16-10a-1327 the opportunity to notify the corporation of their own estimate of the value of the shares. *See generally Utah Corporation and Business Law Manual with Commentary*, 411-2 (2008).

NRUC has excluded the plaintiffs from its complaint enacting a judicial proceeding to determine the fair market value of dissenters' shares. (Def.'s Mem. in Supp. of J. on Pleadings, ii-iii.) NRUC maintains that this exclusion is appropriate under a strict reading of Utah Code §16-10a-1328 since that section states that "[a] dissenter waives the right to demand payment under this section unless he causes the corporation to receive the notice required by Subsection (1) within 30 days after the corporation made or offered payment for his shares." NRUC contends that the plaintiffs' demand for $3.00 per share in the Wedbush Payment Demand dated December 29, 2012, does not qualify under the statute because it was not received "within 30 days *after* (italics added)" the corporation's payment, but rather was received 25 days prior to the payment. (Def.'s Mem. in Supp. of J. on Pleadings, 3-4.) Furthermore, NRUC maintains that the plaintiffs are properly excluded from the proceedings because they never received an "offer" as NRUC interprets the term under the Statute. NRUC argues that the term "offer" in §16-10a-1328 "expressly refers to an 'offer made by a corporation under Section 16-10a-1327.'" (Def.'s Reply in Supp. of Mot. for J. on Pleadings, 1 *citing* Utah Code §16-10a-1328(1).) The term "offer" in §16-10a-1327 is limited to an offer made to shareholders who acquired their shares after the announcement date of the relevant corporate action. According to NRUC, the plaintiffs, who held their shares prior to the announcement of the short-form merger, were ineligible for, and thus did not receive, the offer contemplated by §16-10a-1328(2). Since they never received an offer under the Statute, the plaintiffs' only avenue for dissent to the corporation's estimation of the fair market value of the shares was to notify the corporation, in writing, of their own estimate with a demand for payment, plus interest and less any payment made under §16-10a-1325, within the 30 days after they received the checks for the payment of their shares.

In contrast, the plaintiffs argue that they properly dissented under Utah Code §16-10a-1328. They maintain that NRUC's December 1, 2011, Notice of Merger was an offer for payment pursuant to §16-10a-1328. Therefore the December 29, 2011, Wedbush Payment Demand for $3.00 per share was proper under §16-10a-1328. The plaintiffs contend that the term "offer" is not used in §16-10a-1328(2) as it is defined in §16-10a-1327, but rather as it would be defined under the general laws of contract. They argue that an offer under §16-10a-1328(2) is an offer "made in good faith which, on acceptance, would be a valid and binding contract" with terms which are "definite and unambiguous." (Pls.' Opp'n to Def.'s Mot. for J. on the Pleadings and in Supp. of Cross Mot. for J. on the Pleadings, 10 *citing DCM Inv. Corp. v. Pinecrest Inv. Co.*, 34 P.3d 785, 788-89 (Utah 2001).) The plaintiffs further contend that an offer under §16-10a-1328(2) should be defined as "a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it." (Pls.' Opp'n to Mot. for J. on the Pleadings and in Supp. of Cross Mot. for J. on the Pleadings, 10 *citing Cea v. Hoffman*, 276 P.3d 1178, 1185 (Utah Ct. App. 2012).)

The court finds the plaintiffs' interpretation of the term "offer" unpersuasive. When Utah Code §16-10a-1328 is read in its entirety, it is clear that the terms "offer" and "payment" are used with the specific meanings allotted to them in §16-10a-1328(1)(a), which explicitly uses them to refer to a dissenter's opportunity to notify a corporation of his own estimate of the fair value of his shares when he believes "that the amount paid under Section 16-10a-1325 or offered under Section 16-10a-1327 is less than the fair value of the shares." Subsection (1)(a) clearly indicates that the "payment" and "offer of payment" contemplated under Subsection (2) are those already mentioned in conjunction with §16-10a-1325 and §16-10a-1327, respectively. There is

11

no reasonable interpretation of §16-10a-1328(2) that does not take into account the specific invocations of a payment under §16-10a-1325 and an offer under §16-10a-1327 in §16-10a-1328(1)(a). Furthermore, the plaintiffs' definition of the term "offer" is unpersuasive because the term "offer" is not used anywhere in Part 13 of Utah's Revised Business Corporation Act in any context that suggests a definition other than that set forth in §16-10a-1327. Indeed, the term "offer" does not appear in the Act until §16-10a-1327. All uses of the term thereafter explicitly refer to "offers" under §16-10a-1327 or, as in §16-10a-1328(2), clearly refer to offers under §16-10a-1327 .

The court applies the term "offer" as it is defined by the statute and as advocated by NRUC. Therefore, an offer, in the context of Utah Code §16-10a-1328(2) can only be referring to an "offer" under §16-10a-1327. Thus, the December 1, 2011, Notice of Merger sent by NRUC was not an offer under §16-10a-1328(2). As a result, the plaintiffs needed to notify NRUC of their alternate valuation of the shares and demand for further payment within 30 days after their receipt of the NRUC's payment to them under §16-10a-1325 which was not made until January 23, 2012. The statute is clear in stating that the notification of demand for further payment under an alternate valuation of the shares must be caused to be received "within 30 days after the corporation made...payment." §16-10a-1328(2). Failure to comply with the strict notification procedure results in the waiver of the right to demand payment under §16-10a-1328. Id. The plaintiffs' demand for $3.00 per share in the Wedbush Payment Demand dated December 29, 2011, does not qualify under the Statute because it caused NRUC to receive the plaintiffs' demand for further payment under an alternate estimated value of the shares *prior* to the §16-10a-1325 payment. The same is true of Wedbush's reassertion of its demand for $3.00 per share

in the Amended Wedbush Payment Demand dated January 12, 2012.

There is no ambiguity in the statement that demand for further payment under an alternate valuation of the shares must be caused to be received "within 30 days after the corporation made or offered payment." Utah Code §16-10a-1328. "Courts must presume that a legislature says in statute what it means and means in statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254-5 (1992). Thus, the language should be applied simply as it reads. The shareholders must cause the demand for further payment to be received within 30 days after payment is made under §16-10a-1325. The distinction between notifying the corporation *prior* to payment under §16-10a-1325, as opposed to *after* such payment, is significant. A dissenter must notify a corporation of its dissent to the valuation of shares *after* the payment is received under §16-10a-1325 "in order to permit the corporation to make an early decision on initiating appraisal proceedings." *Utah Corporation and Business Law Manual with Commentary*, 412 (2008). At oral argument, NRUC suggested that the "30 days *after*" requirement allows a corporation to know if dissenters under §16-10a-1323 decide, after receiving payment under §16-10a-1325 and considering the expense of further litigation, that they no longer wish to dissent. This scenario seems to have occurred with some of Wedbush's clients in the matter before the court. The Wedbush Payment Demand of December 29, 2012, was written on behalf of 25 shareholders. Less than a month later, on January 12, 2012, the Amended Wedbush Payment Demand was only written on behalf of 17 shareholders. Thus the need for shareholders to reassert their demand for further payment after receiving §16-10a-1325 payment seems to be borne out by the facts of the present case.

Finally, all of the plaintiffs exercised their dissenters' rights through Wedbush, which is

an established firm specializing in securities brokerage and investment banking services. Though the procedure for asserting dissenters' rights under Part 13 of Utah's Revised Business Corporation Act is somewhat complicated and strict, it is not so complicated as to be unintelligible to a professional firm specializing in such transactions.

## CONCLUSION

For the foregoing reasons, the court concludes that the plaintiffs did not properly demand further payment of their estimated value of the shares under Utah Code §16-10a-1328. Because the plaintiffs failed to cause their demand for further payment to be received by NRUC after they received payment under §16-10a-1325, the plaintiffs waived their right to demand further payment and participate in any judicial proceedings to determine the fair market value of the shares. Therefore, defendant NRUC's motion for judgment on the pleadings is GRANTED, and the plaintiffs' cross motion is DENIED. The plaintiffs' claims are hereby dismissed.

DATED this 20th day of November, 2012.

BY THE COURT:

*/s/ Dee Benson*

DEE BENSON

United States District Judge